**FIFTEEN THOUSAND EIGHT HUNDRED AND FORTY–FOUR WELFARE RECIPIENTS, Plaintiffs, Appellants,**

v.

**Edward J. KING et al., Defendants, Appellees.**

No. 79–1454.

United States Court of Appeals, First Circuit.

Argued Oct. 3, 1979.

Decided Dec. 6, 1979.

Barbara Sard, Roxbury, Mass., Deborah L. McCutcheon, East Boston, Mass., Allan G. Rodgers, Winchester, Mass., and Paul R. Collier, III, Boston, Mass., on brief, for appellants.

Betty E. Waxman, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and E. Michael Sloman, Asst. Atty. Gen., Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellants appeal from the district court's denial of their motion for a preliminary injunction. Appellants initiated this action on behalf of 15,844 recipients of Aid to Families With Dependent Children (AFDC) and General Relief (GR). Their complaint focussed on the efforts of the state of Massachusetts to use a "computer match" prepared by the Social Security Administration (SSA) to schedule AFDC and GR eligibility redeterminations and possible fraud investigations of the plaintiff class members.

The "computer match" consisted of a comparison of AFDC and GR recipients with an SSA list of individuals for whom earnings were reported during the last quarter of 1977. Based upon the results of this match, the Massachusetts Department of Public Welfare (DPW) mailed notices to the members of the plaintiff class in March of 1979. The notices instructed the individ-

uals who received them to attend "redetermination interviews" to which they were to bring evidence of their earnings from 1977 on. DPW workers were instructed to use the results of the interviews to refer the names of recipients who received overpayments which were not the result of internal DPW error to the Bureau of Welfare Auditing (BWA) for criminal fraud investigations.

Appellants claimed that these procedures employed by the state violated federal regulations and impermissibly blended the state's dual functions of investigating welfare fraud and ascertaining the current eligibility of welfare recipients. Following a hearing on these claims, the district court granted appellants' request for temporary relief, concluding that the state was conducting criminal fraud investigations in the guise of eligibility redeterminations. The court ordered the defendants to suspend any adverse actions against members of the plaintiff class and to mail to each class member a notice "curing" the defects of the previously mailed notice. The court further indicated that the "computer match" follow-ups could only be reactivated if the eligibility redeterminations and fraud investigations were properly segregated. The court's order set forth rough guidelines and specific requirements regarding any possible future actions by the state.

Defendants issued the notices specified in the court order and vacated all prior adverse actions against members of the plaintiff class. They then established new procedures for recommending the eligibility redeterminations and fraud investigations. DPW interviewers were instructed under the new procedures to limit their inquiries to present rather than past earnings. Procedures were established for segregating DPW and BWA files and for purging DPW files of the results of the redetermination interviews.

Following the commencing of DPW interviews and BWA investigations under the new procedures, appellants returned to the district court seeking further temporary relief and a preliminary injunction against the new procedures. They claimed that the new procedures were not purged of the original defects, that they violated their constitutional and statutory rights, and deviated from defendants' normal procedures.

After reviewing appellants' claims, the district court ordered several minor adjustments in the new procedures, but otherwise denied the motion for a preliminary injunction on the grounds that appellants failed to demonstrate a probability of success on the merits. This appeal followed.

■ To prevail on this appeal from the denial of the motion for a preliminary injunction, appellants must meet the heavy burden of establishing that the denial was an abuse of discretion or the clear result of an error of law. *See Grimard v. Carlston*, 567 F.2d 1171, 1173 (1st Cir. 1978). In attempting to meet this burden, appellants put forward three different theories upon which they base their claim of likelihood of success on the merits. First, they assert that the DPW and BWA proceedings are not in fact separated, but instead are used to whipsaw members of the plaintiff class into self-incrimination. Second, they claim that the procedures used for referring cases to the BWA for fraud investigations violate federal and state regulations. Finally, they contend that class members have a right to appointed counsel at the BWA interviews and that they must be notified of this right in writing prior to the interview.

Concerning the appellants' first theory, the district court did not disagree with the proposition that the state could not use the DPW redetermination interviews as a subterfuge for gathering evidence to be used in an ongoing BWA criminal investigation. Indeed, it was precisely because the court regarded the original procedures as evidencing such a blending of the civil and criminal functions that it granted the temporary relief which resulted in the revamping of the state's plans.

■ Appellants' dispute with the district court findings is a dispute over the facts. Appellants contend that the DPW and BWA proceedings are still not segregated.

The district court, however, found that "the defendants' efforts to separate DPW and BWA activities and records, and the very limited scope of examination in DPW interviews demonstrate their good faith in isolating eligibility redeterminations from fraud investigations". The record upon which the district court based its findings shows that new departmental procedures were instituted whereby DPW personnel are instructed to restrict the scope of their inquiries to present earnings. The record further shows that the new regulations provide for separation of DPW and BWA files, purging from DPW files of information gleaned from recipient contact, and denial of access to DPW files to BWA workers. In reaching the preliminary factual finding that it did on such a record, the district court clearly did not abuse its discretion.[1]

■ Appellants' second theory upon which they base their claim that the district court abused its discretion in judging the likelihood of success on the merits is based in large part upon an issue of law which appellants assert is one of first impression. Specifically, appellants claim that the various procedures adopted by the state for referring possible cases of fraud from the DPW to the BWA and from the BWA to law enforcement officials violate an HEW regulation, 45 C.F.R. § 235.110, which requires that a state plan "establish and maintain . . . methods and criteria for identifying situations in which a question of fraud in the program may exist" and "procedures" for referring cases for investigation and prosecution.

Nothing in this regulation specifies what "methods and criteria" can or should be adopted. Appellants nevertheless contend that the district court erred in not reading into the regulation requirements for specific "methods and criteria" which go beyond that adopted by defendants and more selectively limit the number of referrals.

The district court rejected this contention on the grounds that appellants have no standing to challenge putative violations of 45 C.F.R. § 235.110. This ruling appears correct; 45 C.F.R. § 235.110 seems designed merely to regulate interagency relations and to insure that the state administrators of the federal programs make some effort to identify and prosecute fraud within their state. It does not purport to limit any such efforts, nor does it purport to create any rights on behalf of the recipients. *Compare with Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) (federal regulation setting determinants of recipient need and qualifications).

In any event, we need not finally decide this question. Massachusetts clearly has adopted some procedures, which is all that the language of the regulation requires. Moreover, based on the evidence in the record, these procedures could not be said clearly to violate any additional requirements which a court might reasonably read in 45 C.F.R. § 235.110 were it proper to do so. Appellants' contention that the procedures which they suggest would work better than those adopted by the state is both unpersuasive and irrelevant.

■■ Appellants' final significant challenge to the district court's exercise of its discretion—that class members have, and must be given written notice of, a right to appointed counsel at BWA interviews—is based upon internal BWA Regulation 4.16(3) which provides that no recipient who desires to have counsel appointed for him is to be interrogated unless an attorney is in fact appointed.[2] The district court found

---

1. On this appeal we do not consider a substantial portion of the evidence upon which appellants base their claims since this evidence is not in the record and appellants' reliance upon it is therefore improper, especially in light of their failure to notify this court as to its status until after appellees brought the matter to the court's attention.

2. BWA Regulation 4.16(3) provides:

"*Self-Incrimination, Warning Against.* Before interrogating or questioning any person suspected of having unlawfully participated in a fraudulent claim or wrongful receipt of money under any assistance program administered by the Department of Public Welfare, the investigative employee conducting the interrogation or questioning shall inform said person of his rights against self-incrimination, to wit, the following:

that the regulation did not require BWA to appoint counsel for those who so desired, but rather only prohibited interrogation in the absence of appointed counsel when the interviewee desired one.

We find no merit to the argument that this finding is erroneous. Appellants' proffered alternative reading of the regulation simply is not supported by the words of the regulation itself, while the court's reading of the regulation is consistent with both the plain language of the regulation and BWA's interpretation and implementation of its own rule. Additionally, the record does not show that the district court abused its discretion in finding that the regulation thus interpreted was not being violated.

■ We therefore reject each of appellants' attacks on the district court's exercise of its discretion in denying the motion for a preliminary injunction. This holding is supported not only by our analysis of appellants' various claims, but also by the fact that the record clearly shows that the district court's handling of this case from its very beginning was both careful and thorough. The temporary relief granted by the court which resulted in the revamping of the state procedures demonstrated a clear and sympathetic understanding of appellants' basic claims and the complicated factual and legal issues. The court's actions and reasoning were in no way clearly erroneous or clearly predicated upon an error of law.

*Affirmed.*

(a) That prior to any questioning he has the right to remain silent;
(b) That anything he says can be used against him in a court of law;
(c) That he has the right to the presence of an attorney prior to any questioning, and that if he cannot afford one, but desires to have one appointed for him, no interrogation or questioning shall take place until an attorney is appointed for him if he so desires;
(d) That he may exercise any of the aforesaid rights any time during the questioning or interrogation."