649 F.2d 71
 MASSACHUSETTS COALITION OF CITIZENS WITH DISABILITIES et
al., Plaintiffs-Appellants,
v.
CIVIL DEFENSE AGENCY AND OFFICE OF EMERGENCY PREPAREDNESS OF
the COMMONWEALTH OF MASSACHUSETTS et al.,
Defendants-Appellees.
 No. 80-1520.
 United States Court of Appeals,
First Circuit.
 Argued Jan. 6, 1981.
Decided May 26, 1981.
 
 Mark Stern, Cambridge, with whom Benjamin Hiller, and Goldstein, Pressman & Stern, Cambridge, Mass., were on brief, for plaintiffs-appellants.
 Mitchell J. Sikora, Jr., Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Alan B. Sherr, Asst. Atty. Gen., Boston, Mass., were on brief, for defendants-appellees.
 Before MARKEY, Chief Judge,* CAMPBELL and BOWNES, Circuit Judges.
 MARKEY, Chief Judge.
 
 
 1
 This is an appeal from the denial of a preliminary injunction against the state agencies and officials responsible for evacuation planning in the event of a meltdown at the Pilgrim I Nuclear Power Facility in Plymouth, Massachusetts. Plaintiffs brought this class action on behalf of persons residing in the area immediately surrounding the facility who are handicapped, those who do not speak English, and those without access to an automobile.
 
 
 2
 Plaintiffs sought and were denied a preliminary order requiring the State Defendants to modify their plan, to test the modified plan, and to report the steps taken to the court within 10 days. We affirm the denial of a preliminary injunction.
 
 Proceedings
 
 3
 In its original complaint, the Massachusetts Coalition of Citizens with Disabilities and others ("Coalition") sought a restraining order compelling the Civil Defense Agency and Office of Emergency Preparedness of the Commonwealth of Massachusetts, its Director, and other state defendants ("Agency"), to curtail the operation of the Plymouth I plant pending implementation and testing of an evacuation plan for evacuating all persons within ten miles of the plant, and to inform all persons within thirty miles of the plant of the dangers of nuclear accidents and the plan's warning-and-evacuation procedures.
 
 
 4
 At the hearing on its motion for preliminary relief, the Coalition submitted a "Proposed Order", which in relevant part read:
 
 
 5
 That the Public Defendants are ordered to provide for and test a warning system adequate to warn all persons within ten (10) miles of the Pilgrim I Plant within fifteen (15) minutes of notification from Boston Edison that an accident has occurred, including but not limited to all such persons with communication disabilities, and report to the Court what steps they have taken to comply with this Order within ten (10) days.
 
 
 6
 That the Public Defendants are ordered to provide for and test an evacuation plan that:
 
 
 7
 (a) provides sufficient transportation to assist all mobility handicapped persons and persons without private transportation to evacuate an area within a radius of ten miles of the Pilgrim I Plant in no more than four hours time;
 
 
 8
 (b) permits and takes account of voluntary evacuation by persons outside an area with (sic) a radius of ten miles from the Pilgrim I Plant, including but not limited to those persons on Cape Cod;
 
 
 9
 (c) that takes into account all meteorological, geographic, traffic, and related factors that might impact on the execution of said plan and describes in detail how each factor shall be handled by personnel in charge of an evacuation;
 
 
 10
 and report to the Court what steps they have taken to comply with this Order within ten days.
 
 
 11
 That the Defendants are ordered to provide all members of the public residing within thirty miles of the Pilgrim I Plant with the maximum possible amount of informational materials describing the improved warning and evacuation plan and how thereunder they should act and/or may obtain assistance; and describing the dangers of a nuclear accident, possible effects thereof, and the need to act in accordance with the requirements of the aforementioned plan.
 
 
 12
 In the light of affidavits, written memoranda and oral argument from all parties, the trial judge issued a decision, accompanied by an opinion, denying all injunctive relief. The Coalition moved for reconsideration of its proposed order. After a second hearing, the trial judge adhered to his decision, noting that plaintiffs had shown neither a reasonable prospect of immediate irreparable injury nor a reasonable prospect of success on the merits.
 
 THE PLAN
 
 13
 The plan in existence when suit was filed included a general section listing overall evacuation measures for the area within a ten mile radius of the Pilgrim I plant, and twelve specific subsections, each constituting a local evacuation plan for a town within the ten mile radius. Respecting a nuclear accident, the plan provides for: (1) notice, warning, and instruction to officials and the public; (2) evacuation routes; (3) evacuation stations and sheltering facilities; (4) provision and protection of food; and, (5) public education about the plan. Respecting evacuation, the plan designates particular evacuation routes and assigns traffic control responsibility and locations to specific local units with available police assistance.
 
 
 14
 The plan requires that it be reviewed and updated every year. It also requires that the Agency educate the public about, and test, each local plan.[1]
 
 Coalition's Arguments
 
 15
 The Coalition, relying on the Agency's receipt of federal funds, invokes this provision, section 504 of the Rehabilitation Act of 1973 (Act):
 
 
 16
 No otherwise qualified handicapped individual shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance
 
 
 17
 Viewing the Act as requiring that every recipient of federal funds must guarantee the handicapped participation in and the benefits of the recipient's program, the Coalition says the Agency violated the act by failing to provide special evacuation procedures for the handicapped.[2]
 
 
 18
 The Coalition further urges that failure to specially and specifically provide for notification and evacuation of class members in the manner set forth in its proposed order is a denial of the constitutional guarantees of equal protection and due process and a denial of the class members' fundamental rights to life, liberty and property.
 
 ISSUE
 
 19
 Whether the trial court abused its discretion in denying the preliminary relief sought by the Coalition.[3]OPINION
 
 
 20
 In an interlocutory appeal from a denial of preliminary injunctive relief, the scope of review is narrow. Application for a preliminary injunction is addressed to the discretion of the trial court, not to that of the appellate court. A-Copy, Inc. v. Michaelson, 599 F.2d 450, 452 (1st Cir. 1978). Hence the Coalition must meet the heavy burden of establishing that the denial here was an abuse of the trial court's discretion or was based on a clear error of law. Fifteen Thousand Eight Hundred and Forty-Four Welfare Recipients v. King, 610 F.2d 32, 34 (1st Cir. 1979); Automatic Radio Mfg. Co. v. Ford Motor Company, 390 F.2d 113, 115 (1st Cir. 1968), cert. denied, 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968).
 
 
 21
 The denial must be affirmed if the trial court examined the appropriate factors and properly concluded that the existence of one of the factors required to support the issuance of a preliminary injunction had not been demonstrated by the Coalition. Factors traditionally examined include: (1) the threat of immediate irreparable harm; (2) the likelihood of success on the merits; (3) whether the public interest would be better served by issuing then by denying the injunction; and (4) the comparable hardship inflicted upon the parties.[4] See Grimard v. Carlston, 567 F.2d 1171, 1173 (1st Cir. 1978); 11 C. Wright and A. Miller, Federal Practice and Procedure § 2948 (1973); See generally, Developments in the Law Injunctions, 78 Harv.L.Rev. 944 (1965).
 
 Irreparable Harm
 
 22
 Only a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined. Parks v. Dunlop, 517 F.2d 785 (5th Cir. 1975). A preliminary injunction will not be issued simply to prevent a mere possibility of injury. A presently existing, actual threat must be shown. 11 C. Wright and A. Miller Federal Practice and Procedure § 2948 (1973); See, State of New York v. Nuclear Regulatory Commission, 550 F.2d 745 (2d Cir. 1977); Crowther v. Seaborg, 415 F.2d 437 (10th Cir. 1969). The harm done the life and property of people, handicapped and non-handicapped, by a nuclear accident or by a nuclear attack of an enemy power, has been described in terms so horrendous as to be almost unthinkable. The harm here involved, however, is not that likely to be produced by uncontrolled nuclear energy as such but the special, additional harm that, it is said, will befall the class members (as opposed to others) in the event of a nuclear accident as a result of inadequacies allegedly present in the plan under attack.
 
 
 23
 The concerns expressed by the Coalition for those less able to escape due to no fault of their own evoke the strongest sympathies. But where, as here, those considerations have not been disregarded, the law governing issuance of mandatory injunctions precludes preliminary interposition of the courts, however sympathetic, in the evacuation planning of the responsible executive agency.
 
 
 24
 Enroute to its conclusion that the Coalition had not met its burden of establishing irreparable harm, the trial court considered: (1) that the plan's ten mile evacuation radius conformed to federal guidance; (2) that non-English speaking, hearing impaired, and handicapped persons living in households might reasonably be expected to receive notice and assistance from other members of the household and from neighbors; (3) that the plan required towns to supplement private automobile transportation with ambulance service, and civil defense and mass transit vehicles; (4) that the plan required extensive simultaneous radio and television notice to accompany loudspeaker street-to-street warnings; (5) that the plan was subject to yearly reevaluation and amendment as necessary and was not permanently limited to its then existing form; and (6) that precise response to traffic and weather conditions must inevitably await the existence of those exact conditions, in the light of which evacuation decisions and directions would be made, as contemplated in the plan.
 
 
 25
 Those considerations, coupled with the failure of the Coalition to demonstrate a probability of immediate irreparable injury, beyond merely raising the specter of a nuclear accident, fully support the trial judge's conclusion that the Coalition had not carried its burden of demonstrating a viable threat of irreparable harm sufficient to warrant preliminary injunctive relief.[5]
 
 Likelihood of Success
 
 26
 The Coalition argues that its assertion of statutory and constitutional violations relieved it of the need to meet the traditional criteria of conventional equitable analysis applicable to demands for preliminary injunctions. It failed, however, to convince the trial court that it had demonstrated a reasonable prospect for success on the merits concerning those asserted violations. Hence the court found no basis for an inference of irreparable harm per se.
 
 
 27
 In Blackwelder Furniture Company of Statesville, Inc. v. Seilig Manufacturing Company, 550 F.2d 189, 195 (4th Cir. 1977), the court compared the requirement for a probability of success showing with the requisite showing of irreparable injury:
 
 
 28
 The importance of a probability of success increases as the probability of irreparable injury diminishes (cases deleted) and where the latter may be characterized simply as 'possible', the former can be decisive.
 
 And, at page 196:
 
 29
 In addition, as we have noted above, even a 'possible' irreparable injury has been held to suffice if there is strong probability of success on the merits.
 
 
 30
 Whether or not we accept plaintiff's view that a showing of violation of legal rights would in itself warrant issuance of a mandatory injunction even without a showing of irreparable harm, and we do not now decide that question, we agree with the Blackwelder court that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown. Recognizing the obvious fact that, despite extensive precautions, a serious nuclear accident is "possible", we therefore go on to discuss the likelihood of success factor, even though we have affirmed the district court's finding that plaintiffs failed to show irreparable harm.
 
 The Rehabilitation Act of 1973
 
 31
 The Coalition attacks the Agency's evacuation plan as a violation of the Act, insisting that the Act requires the Agency to take the steps it recites in its proposed order.[6] Only thereby, says the Coalition, would the benefits of the plan be available to the disabled. The Coalition equates what it views as absence from the evacuation plan of certain affirmative provisions for special needs of particular persons with an effective exclusion of those persons from the benefits of the plan. Because the Coalition would apparently have drafted the plan differently, it demands that its proposed preliminary order be granted. We do not agree that deficiencies, if deficiencies there be, in the present evacuation plan so clearly and necessarily preclude the handicapped from enjoying the benefits of that plan as to warrant the mandatory injunction sought; nor can we agree that any such deficiencies constitute a discrimination against the handicapped sufficient to compel a court to curtail the operation of the power facility, as was originally sought, or to order comprehensive planning, testing, and reporting procedures such as those set forth in the Coalition's proposed order.[7]
 
 
 32
 Both parties cite Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), wherein a deaf applicant was denied admission to a nursing program because of her hearing disability. The court held that the school had not violated the Act, noting that the applicant's handicap rendered her unqualified to perform nursing functions. The court went on to compare sections of the Act, noting that whereas section 503 requires federal contractors to take affirmative action to employ and advance qualified handicapped individuals, section 504 does not refer to affirmative action, and concluding: "Here, neither the language, purpose nor history of § 504 reveals an intent to impose an affirmative action obligation on all recipients of federal funds." 442 U.S. at 411, 99 S.Ct. at 2369.[8]
 
 
 33
 It is the Coalition's initial task to show at least the probability of a legal duty under the act. In view of the discussion in Davis of the limited mandate imposed upon federal fund recipients under section 504, we cannot say that the trial judge abused his discretion in concluding that the Coalition had not met its burden of showing a likelihood that it can successfully establish a violation of the Act. In sum, the Coalition's arguments based on the Act do not reflect such a likelihood of success as would counterbalance its failure to demonstrate presence of the irreparable injury factor and are thus insufficient to command issuance of an injunction.
 
 Equal Protection
 
 34
 The Coalition argues that handicapped persons comprise a suspect class for purposes of the equal protection clause; that strict scrutiny of state action or at least a "middle-tier" scrutiny is therefore mandatory; and that under such standards of review a classification must serve important governmental objectives and be substantially related to achievement of those objectives, citing Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976). In Craig, however, the Supreme Court, relying on its earlier decision in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), concluded that a gender-based classification in state law constituted a denial of the equal protection to males aged 18-20. No such suspect criterion is presented here.
 
 
 35
 The cases relied upon by the Coalition do not support its expansive view that the handicapped comprise a suspect class. In Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1973), the Court held that conditioning the receipt of welfare benefits upon the satisfaction of a durational residency requirement violated the Equal Protection Clause of the Fourteenth Amendment by unduly burdening the right to travel. In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), also cited by the Coalition, the Court held that deliberate indifference to the serious medical needs of persons held in custody by the state would violate the Eighth Amendment. None of those authorities supports the Coalition's argument. Indeed, authorities to the contrary are more persuasive. See e. g., Legion v. Richardson, 354 F.Supp. 456 (S.D.N.Y.1973), (three-judge court) aff'd, sub nom. Legion v. Weinberger, 414 U.S. 1058, 94 S.Ct. 564, 38 L.Ed.2d 465 (1973). In Legion the court held that a statutory distinction between medically indigent persons who require short term care and those who require long term care does not violate the Equal Protection Clause. In so holding the court noted that in the area of economics and social welfare a State does not violate the Equal Protection Clause merely because classifications made by its laws are imperfect. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).
 
 
 36
 Because handicapped persons, and persons otherwise immobile, in specific groups or in their aggregate diversity, have not been shown to constitute a suspect class, a state government would not be here required to justify disparate treatment by a compelling state interest and its achievement through the least drastic means possible. See San Antonio School District v. Rodriguez, 411 U.S. 1, 128, 93 S.Ct. 1278, 1345, 36 L.Ed.2d 16 (1973). The present evacuation plan, however, involves neither classification nor disparate treatment. It would therefore pass constitutional muster if the handicapped had been shown to constitute a suspect class and a strict or "middle-tier" scrutiny were applied.
 
 
 37
 The present plan does not classify evacuees, nor does it provide for disparate treatment of those to be evacuated. If at the time of a nuclear accident some persons, handicapped and nonhandicapped, automobiled and nonautomobiled, become subject to some inequality of the plan's effects, such inequality is not the fault of the plan, the provisions of which bear a reasonable relationship to the evacuation objectives sought to be fulfilled by adoption of the plan. Schweiker v. Wilson, -- U.S. --, 101 S.Ct. 1074, 67 L.Ed.2d -- (1981)); Dandridge v. Williams, supra.
 
 
 38
 Moreover, the special needs of the handicapped are not being ignored. The state evacuation plan is reasonably calculated to provide safe evacuation of nearby residents in the event of nuclear accident. It is an evolving plan, carrying its own requirement for periodic updating which insures that it can be amended to provide additional procedures designed to further minimize difficulties complained of by the class members, as well as other burdens identified as the plan matures. The rationality of such a "one step at a time" approach to emergency evacuation planning further argues against the Coalition's constitutional claim. National Roofing Contractors Asso. v. Brennan, 495 F.2d 1294 (7th Cir. 1974), cert. denied 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975). Nor have state authorities been shown to have been insensitive to the needs of the handicapped. The present plan relied upon other household members, the media, loudspeaker hailings, ambulances, and civil defense and mass transit vehicles, to warn and assist in evacuating the handicapped and those otherwise immobile. That reliance may, in the Coalition's eyes, be less than ideal; it is not unreasonable as a matter of law.
 
 DUE PROCESS
 
 39
 The Coalition, devoting but two pages of an extended brief to its due process argument, asserts that the evacuation plan should guarantee the safety of all residents, resting that assertion on the constitutional right to protection of their life, health and safety. The due process clause, however, provides no such right. That clause provides that the states may not deprive their citizens of life, liberty, or property without due process of law. In enacting the evacuation plan, the state of Massachusetts has not deprived any person of life, liberty or property. Indeed, the state has done the opposite; it has provided some degree of protection, albeit, perhaps, imperfect protection, against a threat to life the source of which threat is not the state. Plaintiffs' claim, in essence, is that the protection provided is unequally effective. We have already answered this equal protection argument. In the due process context, governmental action is proscribed only when it imposes a positive burden on a protected interest. Such a burden was imposed on a fundamental liberty in each of the cases the Coalition cites. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right of married couples to use contraception), Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958) (right to travel), Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964) (right to travel), Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (mandatory termination provisions of maternity rules), and United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1939) (regulation of interstate commerce). No such positive burden is involved here.
 
 
 40
 Because the evacuation plan does not itself violate a fundamental right, the burden falls on its challengers to show that it is invidiously discriminating, or that it is patently arbitrary, or that it is utterly lacking in rational justification. Gruenwald v. Gardner, 390 F.2d 591 (2d Cir. 1968), cert. denied 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968), Woods v. Holy Cross Hospital, 591 F.2d 1164 (5th Cir. 1979). The Coalition has made no such showing. Nor has the Coalition demonstrated a likelihood that it will succeed in making such a showing.
 
 
 41
 That the plan cannot guarantee the safety of all does not, of course, end the inquiry. That the claim establishes a rationally based emergency response procedure, reasonable in scope and adopted in the interest of area citizens, and that it moderates the impact of burdens imposed upon class members by their impairments by providing for extensive notice and supplemental public transportation, however, is sufficient to withstand a demand for the mandatory injunction here sought. Nachman Corp. v. Pension Benefit Guaranty Corp., 592 F.2d 947 (7th Cir. 1978); aff'd 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1979).[9]
 
 
 42
 Hence the Coalition, having demonstrated no due process duty of the agency to immediately adopt a more extensive plan corresponding or similar to its proposed order, has failed to carry its burden of establishing a due process right to injunctive relief.
 
 CONCLUSION
 
 43
 Accordingly, we hold that the trial court did not err in concluding that the Coalition had demonstrated neither the probability of irreparable harm nor a likelihood of success on the merits. Hence it committed no abuse of discretion and we affirm the court's denial of the preliminary injunction sought.
 
 
 44
 AFFIRMED.
 
 
 
 *
 Of the U.S. Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 The Nuclear Regulatory Commission (NRC), not a party here, has been granted authority to regulate respecting the effects of a nuclear power facility on the public health and safety, including the authority to grant, amend, modify, or revoke operating licenses, 42 U.S.C. §§ 2231-42, See Susquhanna Valley Alliance v. Three Mile Island Nuclear Reactor, 619 F.2d 231 (3rd Cir. 1980), the authority to require preliminary and final evacuation plans, 10 CFR § 50.34(a), (b), and broad regulatory authority over the development of nuclear energy. Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, 435 U.S. 519, 526, 98 S.Ct. 1197, 1203, 55 L.Ed.2d 460 (1978)
 
 
 [2]
 The Coalition also requests relief on behalf of all non-English speaking residents and all those without access to an automobile (presumably including all those who, though having such access at other times, might happen to be without such access at the time of a nuclear accident)
 
 
 [3]
 The Agency's argument that the Coalition failed to exhaust its administrative remedies is not urged on appeal. Neither the NRC nor the Agency currently require formal hearings on the adequacy of evacuation plans, See generally, Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)
 
 
 [4]
 Because we hold, infra, that the trial court did not err in concluding that the Coalition established neither irreparable harm nor a likelihood of success on the merits sufficient to warrant a preliminary injunction, we do not address the public interest and comparable hardship factors. For the same reason, the absence of specific findings below on the latter factors is of no moment on this appeal
 
 
 [5]
 For circumstances supporting the grant of preliminary injunctive relief under the Rehabilitation Act, See, Camenisch v. University of Texas, 616 F.2d 127 (5th Cir. 1980), cert. granted, -- U.S. --, 101 S.Ct. 853, 66 L.Ed.2d 797 (1980). In that case plaintiff, a deaf graduate student, alleged irreparable harm unless the University of Texas provided sign language interpretor services enabling him to complete a masters program by end of the summer term. Completion of a masters degree that summer was found a prerequisite to plaintiff's continued employment
 
 
 [6]
 A threshold issue in connection with this statutory claim is whether a private right of action may be inferred from section 504. Southeastern Community College v. Davis, 442 U.S. 397, 404 n.5, 99 S.Ct. 2361, 2366 n.5, 60 L.Ed.2d 980 (1979). Because we reject the statutory claim on its merits, we have no need to decide this preliminary issue and we express no views on it
 
 
 [7]
 The authority of the District Court Judge to issue a preliminary injunction should be sparingly exercised. Mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief. Wetzel v. Edwards, 635 F.2d 283 (4th Cir. 1980)
 
 
 [8]
 But note the special circumstances in Camenisch v. Univ. of Texas, supra, n. 5
 
 
 [9]
 That the plan is rationally based and reasonably meets the needs of all does and should end the inquiry of the courts, which are not and should not be equipped, trained, or staffed, either to design evacuation plans or to engage in evaluation of the minute details of evacuation plans designed by responsible and accountable officials of the executive branches of governments