Pedro Romero ROIG, et al., Plaintiffs,

v.

**PUERTO RICO NATIONAL GUARD,**
et al., Defendants.

Civil No. 99–1367(PG).

United States District Court,
D. Puerto Rico.

April 28, 1999.

Wilfredo Ruiz–Cabán, Hato Rey, PR, Stuart A. Kirsch, American Federation of Government Employees, Riverdale, GA, for plaintiff.

Marie Cortés–Cortés, Federal Litigation Division, Dept. of Justice, Commonwealth of P.R., San Juan, PR, for defendant.

### OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

Pending before this court is plaintiff's motion for preliminary injunction (Dkt.# 10) pursuant to Federal Rule of Civil Procedure 65(a), and the Commonwealth of Puerto Rico's (hereinafter referred to as the "Commonwealth") opposition to said motion (Dkt.# 12). For the reasons expounded below, the court finds merit in plaintiff's request, not without cautioning that the present decision does not involve a final determination on the merits, thus temporarily leaving in a state of uncertainty whether permanent relief shall eventually be granted.[1]

### Factual & Procedural Background

On June 19, 1998, Brigadier General Daniel F. López Romo, Assistant Adjutant General / Air Commander for the Puerto Rico National Guard, notified TSgt. Orlando Montañez Meléndez and MSgt. Miguel A. Astacio Castro of their non-retention by the Puerto Rico Air National Guard's (hereinafter referred to as "PRANG") Enlisted Selective Retention Review (hereinafter referred to as "ESRRB"). The ESRRB is held annually and provides a

tool for the Air National Guard to maintain a stable and viable force structure, as a reserve component of the Air Force. During 1998, said entity considered the cases of two hundred eighty nine service members from the PRANG and recommended the non retention of fifty-two PRANG enlisted members, twenty-four of which, including TSgt. Orlando Montañez Meléndez and MSgt. Miguel A. Astacio Castro, were also technician employees.

TSgt. Orlando Montañez Meléndez and MSgt. Miguel A. Astacio Castro were also notified that they were to be separated from the PRANG effective October 1, 1998. A memorandum stated that the Review Board had been conducted in accordance with Air National Guard Instruction 36–2606, a military regulation. Eventually, TSgt. Orlando Montañez Meléndez and MSgt. Miguel A. Astacio Castro were also separated from their technician employment. At the time of their separation they were also members of AFGE Local 3936.

Subsequent to the notification given by BG López Romo, the membership of AFGE Local 3936 approved a resolution dated August 26, 1998 repudiating and condemning the non retention of Montañez Meléndez and Astacio–Castro. On August 27, 1998, an "Extraordinary Emergency Union Meeting" was held and on November 30, 1998, AFGE Local 3936 scheduled a "protest rally" for December 8, 1998 in opposition to the termination of TSgt. Orlando Montañez Meléndez's and MSgt. Miguel A. Astacio Castro's employment.

The remaining relevant facts are in dispute: Defendants claim that BG López Romo summoned TSgt. Pedro Romero, president of AFGE Local 3936, and gave him instructions as to how the picketing was to be held, in particular that no picketing would be allowed inside the Muñiz Air National Guard Base, that the picketing would have to be after working hours, that no uniforms would be used by the protesters, and that said activity had to be con-

---

1. Throughout this opinion and order, "plaintiff" shall refer to Pedro Romero Roig individually, despite the fact that other plaintiffs are mentioned in the complaint.

ducted in an orderly manner. Romero, however, asserts in his affidavit that BG López Romo did not offer him guidance during the unit training assembly with regard to the picketing, but at the Community Club, "where drinking regularly occurs." Romero also asserts in his sworn statement that BG López Romo never game him any orders regarding the location or time of the picketing scheduled to occur on December 8, 1998.

The defendants claim that the picketing was an attempt to confuse the public and to coerce the officers of the PRANG to change a determination already made by military authorities. Defendants also allege that the picketing was held "in open violation of the law and the order given." Furthermore, defendants state that the operations of the MANG Base were affected, and that defamatory and offensive language was used against members of the Puerto Rico National Guard. Romero's version of the incidents, unsurprisingly, is quite different. According to Romero, the picketing was held in an orderly fashion, without disrupting in any way the operations of the base.

On April 7, 1999, this court issued a temporary restraining order, which lost its effect on April 17, 1999. At the present, Romero has not been allowed to return to his job.

### Legal Analysis & Discussion

#### I.  *Whether the Claims Are Justiciable*

The Commonwealth forcefully argues that the matter before this court is not justiciable, and even if it is justiciable, that no jurisdiction can validly be exercised under the present circumstances. The concept of justiciability generally refers to whether that which is to be decided is appropriate for court review. The "[t]erm refers to real and substantial controversy which is appropriate for judicial determination, as distinguished from dispute or difference of contingent, hypothetical or abstract character." Black's Law Dictionary, 6th ed. (1990) (citation omitted).

The Commonwealth insists that the decision affecting Romero is a military order, and as such, should be reviewed in a military setting, rather than a federal district court such as the hereby addressing this petition for preliminary injunction. In support of its argument, the Commonwealth makes basically two assertions. First, the statutory definition of a technician reveals that its military functionality is inextricably intertwined with its civilian role. *See* 32 U.S.C. § 709(e)(1) ("[A] technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned"). Second, the Commonwealth cites *Wright v. Park*, 5 F.3d 586, 588–590 (1st Cir.1993) for the proposition that "since National Guard technicians' positions are encompassed within a military organization and require the performance of work directly related to national defense, such position are themselves military in nature," and that courts cannot review military decisions that are taken within the "course of activity incident to service." [2]

"Unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Dep't of Navy v. Egan*, 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988) (citations omitted). It is also acknowledged that "while a technician's job is a composite, containing both

---

**2.** Although it is unclear what exactly constitutes "course of activity incident to service" and the Court of Appeals for the First Circuit has not yet made any pronouncement of said expression, the phrase has been construed in

*Day v. Massachusetts Air Nat. Guard*, 994 F.Supp. 72, 77 (D.Mass.1998) (adopting the Fifth Circuit's test in *Kelly v. Panama Canal Commission*, 26 F.3d 597, 600 (5th Cir.1994)).

civilian and military pieces, the job's dual functions are inseparable; they are, like Chang and Eng, joined at the chest." *Wright v. Park,* 5 F.3d 586, 589 (1st Cir. 1993). However, the court must not blindly rest oblivious of plaintiff's plea for *equitable relief* simply because the incidents in controversy occurred in the midst of a military context. The analysis, if executed within the parameters of a preliminary injunction as opposed to damages, must neither be automatic nor rigid, but carefully tailored to the circumstances before the court.

In *Mindes v. Seaman,* 453 F.2d 197, 201–202 (5th Cir.1971), the Fifth Circuit outlined a four-pronged test that sheds light on the matter presently at bar:

> A district court faced with a sufficient allegation must examine the substance of that allegation in light of the policy reasons behind nonreview of military matters. In making that examination, such of the following factors as are present must be weighed (although not necessarily in the order listed).
>
> 1. The nature and strength of the plaintiff's challenge to the military determination. Constitutional claims, normally more important than those having a statutory or regulatory based, are themselves unequal in the whole scale of values . . . .
>
> 2. The potential injury to the plaintiff if review is refused.
>
> 3. The type and degree of anticipated interference with the military function. Interference per se is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief.
>
> 4. The extent to which the exercise of military expertise or discretion is in-

volved. Courts should defer to the superior knowledge and experience of professionals in matters such as promotion or orders directly to specific military functions.

We do not intimate how these factors should be balanced in the case sub judice. That is the trial court's function.

The balancing approach outlined in *Mindes* was eventually adopted by the First Circuit in *Peñagaricano v. Llenza,* 747 F.2d 55, 60–64 (1st Cir.1984), with the sole difference that the First Circuit placed greater emphasis on the last two factors of the *Mindes* test. *Id.* at 63–64.

The *Wright v. Park, supra,* case upon which the Commonwealth vigorously makes its nonjusticiability argument, overruled *Peñagaricano,* and implicitly, the *Mindes* balancing approach, and instead established "a bright-line rule as the definitive statement on the justiciability of civil rights claims in the military context, including the National Guard." However, *Wright v. Park* involves a suit for damages; the instant action, on the other hand, involves a request for injunctive relief.[3] Therefore, although *Wright v. Park,* abolished the multifactor *Peñagaricano–Mindes* test in civil rights claims involving damages, silence has been kept with regard to the applicability of a bright-line rule in those cases entailing a preliminary injunction.

Applying hence the first factor of the *Peñagaricano–Mindes* test to plaintiff's request for a preliminary injunction, the degree of importance of the claims made is significant since they involve First, Fifth, and Fourteenth Amendment claims, not allegations based upon statutorily acquired rights. With regard to the second factor, the potential injury to the plaintiff if review is refused is quite obvious: Romero would lose his job. Indeed,

---

**3.** In an unpublished opinion, the First Circuit has stated that "[w]e need not decide whether the 'bright line rule' adopted in *Wright v. Park,* 5 F.3d 586, 590 (1st Cir.1993) applies to claims for injunctive relief in the form of reinstatement." *Hernández–Ortiz v. Díaz–Colón,* 134 F.3d 361 (1st Cir.1998) (unpublished).

he is unable at the present moment to return to his job as a technician. As to the third factor, judicial review in this particular case would not impose much military interference, since plaintiff is not a high-ranking employee within the military hierarchy, thus not directly participating within those circles where sensitive information is exchanged. As to the fourth and final factor, the matter in controversy is not some complex military decision, but rather the freedom-of-speech right of employees to express their views after working hours.

Having weighed all the factors mentioned above, this court holds that plaintiff's request for a preliminary injunction is justiciable. Furthermore, this court also has federal-question jurisdiction under 28 U.S.C. § 1331 to entertain said request since the complaint clearly points toward rights protected under the United States Constitution.

## II. Whether Sovereign Immunity Bars This Suit

■ It is well settled that the Eleventh Amendment prohibits actions in federal courts against a state that has not waived its sovereign immunity. *See generally Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Will v. Michigan Department of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Although the Eleventh Amendment's protection does not extend to counties or municipal corporations, it does cover state officials within certain circumstances or entities that act as an arm of the state. *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico,* 818 F.2d 1034, 1036 (1st Cir.1987) ("When an action is brought against a public agency or institution, the application of the Eleventh Amendment

depends upon whether the entity 'is to be treated as an arm [or alter ego] of the [s]tate partaking of the [s]tate's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend' "). Despite the fact that the Commonwealth of Puerto Rico is a territory of the United States, it "enjoys the full benefits of the Eleventh Amendment" to the same degree that states do. *Fernández v. Chardón,* 681 F.2d 42, 59 n. 13 (1st Cir.1982) (citation omitted), *cert. denied* 459 U.S. 989, 103 S.Ct. 343, 74 L.Ed.2d 384. *See also Colón–Rivera v. Puerto Rico Department of Social Services,* 736 F.2d 804, 806 (1st Cir.1984), *cert. denied* 469 U.S. 1112, 105 S.Ct. 795, 83 L.Ed.2d 788.

Although plaintiff has failed to specify in the complaint whether his claims have been brought pursuant to 42 U.S.C. § 1983, this court shall assume that plaintiff is suing under 42 U.S.C. § 1983 as a vehicle of embodiment for the cause of action related to his First, Fifth, and Fourteenth Amendments claims. A § 1983 suit against the Puerto Rico National Guard and its officers in their official capacities is essentially a suit against the Commonwealth of Puerto Rico.[4] With regard to the former.

> the Puerto Rico National Guard is the alter-ego of the Commonwealth of Puerto Rico ... The fact that the Governor of Puerto Rico is the Commander in Chief to the Puerto Rico National Guard clearly shows that the agency is a direct arm of the executive. That the Commonwealth of Puerto Rico is the real party in interest is clear.

*Ursulich v. Puerto Rico National Guard,* 384 F.Supp. 736, 738 (D.P.R.1974), *citing Whitten, Jr. Inc. v. State University Fund,* 493 F.2d 177 (1st Cir.1974). With regard to the latter, "official capacity suits generally represent only another way of pleading an action against an entity of

---

**4.** "Guard technicians are federal civil servants, *hired and supervised by the state Adju-* *tant General.*" *Charles v. Rice,* 28 F.3d 1312, 1316 (1st Cir.1994) (emphasis added).

which an officer is an agent." *Monell v. Social Services of City of New York et al.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See also Kentucky v. Graham,* 473 U.S. 159, 165–166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Thus, at first glance, it would seem that defendants' sovereign immunity rights have been triggered.

■ Nevertheless, since the remote days in which *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824) was decided and presided by then Chief Justice Marshall, a fiction has been entrenched within the judicial interpretation of the Constitution to the effect that the Eleventh Amendment is not an obstacle for suits in equity so long as the state officials, rather than the state itself, are the ones named as defendants. Although in *Ford Motor Co. v. Department of the Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945) the Supreme Court held that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants," the Eleventh Amendment does not bar suits against state officers when the relief sought is injunctive in nature. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Even though plaintiff names the Commonwealth of Puerto Rico as a defendant in the case at bar, the complaint also explicitly adds among the defendants "officers for [sic] the Puerto Rico Adjutant General, Puerto Rico National Guard, and Puerto Rico Air National Guard." Since plaintiff is seeking declaratory and injunctive relief, as opposed to damages, the Eleventh Amendment does not preclude his action before this court.

III. *Whether the Preliminary Injunction Should Be Granted*

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* Civil 2d § 2948. The determination of whether this burden has been met rests within the realm of the court's discretion. *See Deckert v. Independence Shares Corp.,* 311 U.S. 282, 290, 61 S.Ct. 229, 85 L.Ed. 189 (1940); *Anheuser–Busch, Inc. v. Teamsters Local No. 633, Nat. Conference of Brewery & Soft Drink Workers,* 511 F.2d 1097, 1099 (1st Cir.1975) (citation omitted), *cert. denied* 423 U.S. 875, 96 S.Ct. 148, 46 L.Ed.2d 109. Such discretion can manifest itself in a diverse array of forms. Thus, a court is not required to grant the relief sought in its totality, *e.g., Elzinga & Volkers, Inc. v. LSSC Corp.,* 838 F.Supp. 1306 (D.C.Ind. 1993); *Maxam v. Lower Sioux Indian Community of Minnesota,* 829 F.Supp. 277 (D.C.Minn.1993), and may impose particular conditions upon the applicant in order to ensure the fairness and efficiency of the process. *Brotherhood of Locomotive Engineers v. Missouri–Kansas–Texas R. Co.,* 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960).

■ "To determine the appropriateness of granting or denying a preliminary injunction ... a quadriple test [must be taken] into account: (1) The likelihood of success on the merits; (2)[t]he potential for irreparable injury; (3)[a] balancing of the relevant equities (most importantly, the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld); and (4)[t]he effect on the public interest of a grant or denial of the restrainer." *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991). *See also Weaver v. Henderson,* 984 F.2d 11, 12 (1st Cir.1993); *Massachusetts Coalition of Citizens v. Civil Defense Agency,* 649 F.2d 71, 74 (1981).

■ "Of these four factors, the probability-of-success component [is] ... critical in determining the propriety of injunctive relief." *Lancor v. Lebanon Housing Au-*

*thority,* 760 F.2d 361, 362 (1st Cir.1985). So far, defendants, unlike Romero, have submitted no affidavits to support their allegations as to what exactly occurred during the picketing of December 8, 1998. Furthermore, defendants have yet to offer any persuasive evidence that the picketing was not carried out in an orderly fashion, as clearly protected by the First Amendment even when done in protest against military actions or civil decisions taken in the National Guard. Thus, plaintiff's likelihood of success cannot be unduly minimized.

■ As to whether Romero would suffer irreparable harm, we must bear in mind that Romero faces a stigma of being discharged from his military and civilian duties, and once one's reputation has been stained, damages rarely fully restore it to its original pristine quality. That Romero has already been discharged does not mitigate in any way the fact that prompt reinstatement would reduce any stigma attached to his person.

■ The balance of equities in the circumstances before this court clearly tip in favor of granting the preliminary injunction. Having the National Guard pay Romero's salary for a few additional months—until a hearing for permanent injunction can be entertained—represents a minimal burden placed upon the government's shoulders. On the other hand, Romero's salary represents his livelihood, and unemployment can cause undue hardship to him and his family.

■ Turning now to the last factor of the equation, this court proceeds from the premise that the First Amendment enshrines fundamental values of our judicial system and our society. Picketing, if conducted at the appropriate time, place, and manner, and with the pertinent permits, is certainly a form of speech, even when those who are picketing are rallying against misconduct in a military base. The public, thus, has a keen interest in the protection of the liberty of expression, since it is in this "marketplace of ideas" that a fruitful exchange crystallizes for the benefit of society as a whole. In particular, the expression of the president of a local chapter of the American Federation of Government Employees deserves the same respect awarded by the United States Constitution to all American citizens.

Having concluded that all four factors have been satisfied to grant a preliminary injunction in plaintiff's favor, one final matter must be addressed. It is well settled that injunctive relief is prospective, not retroactive. *Santiago v. Corporacion De Renovacion Urbana Y Vivienda De Puerto Rico,* 554 F.2d 1210, 1212 (1st Cir. 1977), *citing Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), *reh'g denied* 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777. Nevertheless, although plaintiff has already been discharged, he is not asking for retroactive backpay. Plaintiff requests injunctive relief, and reinstatement is prospective, not retroactive.

## Conclusion

**WHEREFORE,** plaintiff's motion for preliminary injunction is hereby **GRANTED.** All parties are given until June 18, 1999 to conduct their discovery proceedings. A pre-trial meeting is hereby scheduled to occur on June 30, 1999 at 8:30 AM. The hearing to address the matter of whether a permanent injunction should be issued is scheduled for July 7, 1999 at 9:30 AM.

**IT IS SO ORDERED.**