SALOMON/NORTH AMERICA,
INC., Plaintiff,

v.

AMF INCORPORATED et al.,
Defendants.

Civ. A. No. 80–278–C.

United States District Court,
D. Massachusetts.

Feb. 19, 1980.

847

Blair L. Perry, Douglas G. Moxham, Hale & Dorr, Boston, Mass., for plaintiff.

Thayer Fremont-Smith, Choate, Hall & Stewart, Boston, Mass., for defendants.

MEMORANDUM

CAFFREY, Chief Judge.

This matter came before the Court on plaintiff's motion for a temporary restraining order. Plaintiff seeks to enjoin defendants from publishing certain advertisements which plaintiff alleges violate § 43(a) of the Lanham Trade Mark Act, 15 U.S.C. § 1125(a), Mass.Gen.Laws Ch. 93A, and the common law doctrine of unfair competition.

Plaintiff and defendants are competitors in the alpine ski binding industry. Plaintiff distributes the Salomon binding in the United States; defendants manufacture and distribute the Tyrolia binding in the United States.

In preparation for the 1980 Winter Olympic Games, the defendants entered into a licensing agreement with the Lake Placid Olympic Organizing Committee which authorized defendants to use the official emblem of the Games in their advertisements and to represent that Tyrolia bindings are the "Official Alpine Ski Bindings selected for use by the Lake Placid Olympic Organizing Committee." In return, defendants agreed to pay the Committee $50,000 and to donate 400 pairs of Tyrolia bindings to be used by "LPOOC alpine ski volunteers, committee members and staff, as well as gifts to such athletes, coaches and support personnel as LPOOC deems appropriate." I judicially notice that several other corporations have entered into agreements with the LPOOC to secure "official" designation for their products, for example, Canon Camera, Duofold Underwear, Schlitz Beer, Skoe Tobacco and Dolomite Ski Boots.

The plaintiff also entered into an agreement in connection with the Games. Salomon bindings and another competitor, Marker alpine ski bindings, were selected to be exclusive suppliers of alpine bindings to the United States Alpine Ski Team. As a result of that agreement, no member of the United States team will use Tyrolia bindings in the 1980 Games.

Plaintiff seeks to enjoin three advertisements which have already been circulated

by defendants. The defendant has stipulated that the first advertisement, published in the December 21, 1979 issue of *Ski Racing*, and the second advertisement, published in the January 1980 issue of *Ski Business,* will not be circulated again; for purposes of this motion they will not be considered further. The third advertisement, appearing in the February 1980 issue of *Ski Magazine,* states in large type that "Tyrolia is proud to have been chosen as the Official Alpine Ski Binding." The advertisement also bears the official Olympic emblem, below which, in smaller type, it states that Tyrolia is "the official Alpine Ski Bindings selected for use by the Lake Placid Olympic Organizing Committee."

Plaintiff argues that the quoted statement in large type gives the false impression that United States team members will be using Tyrolia bindings. While plaintiff concedes that the statement underneath the emblem is literally true, plaintiff contends that the total impression created on the reading public is that Tyrolia bindings have been selected by the Organizing Committee for use by skiers competing in the alpine events, which is not the fact.

Plaintiff alleges that as a result of defendants' advertisements it has already suffered substantial loss of sales, profits, and goodwill. Furthermore, plaintiff alleges that, unless the defendants are enjoined from doing so, they "will continue to cause the publication of false representations that members of the United States Alpine Ski Team will use, are using, or have used Tyrolia Alpine Ski Bindings in the 1980 Olympic Winter Games," resulting in irreparable injury to plaintiff.

■ In order to prevail on their motion for a temporary restraining order, plaintiff must demonstrate both a reasonable likelihood of success on the merits and the existence of an immediate irreparable harm which outweighs any possible harm to the defendants from the injunctive relief sought. *Garzaro v. University of Puerto Rico,* 575 F.2d 335, 338 (1st Cir. 1978); *Automatic Radio Mfg. Co. v. Ford Motor Co.,* 390 F.2d 113, 115–16 (1st Cir.), *cert. denied,*

391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968).

■ In deciding whether plaintiff has demonstrated a sufficient likelihood of success on the merits, the Court will first consider plaintiff's claim that the defendants' advertisement amounts to unfair competition. The traditional doctrine in unfair competition is "that competitors' actions for false advertising are limited to instances of trademark infringement, passing off, and product disparagement." *Electronics Corp. of America v. Honeywell, Inc.,* 428 F.2d 191, 194 (1st Cir. 1970). The defendants here do not pass off their products as being those of a competitor, nor do they directly disparage the products of a competitor. Although the *Electronics Corp.* case recognized an exception to the traditional doctrine in situations where there are only two competitors in the market, *id.* at 194, this exception is not applicable here since the two parties to this action concededly are not the only two manufacturers of alpine ski bindings. Therefore, plaintiff has not established a reasonable likelihood of success on the merits of its unfair competition claim.

Plaintiffs also claim that defendants' advertisement violates section 43(a) of the Lanham Trade Mark Act, 15 U.S.C. § 1125(a). Section 43(a) provides that:

"(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he

is or is likely to be damaged by the use of any such false description or representation."

■ Defendants contend that plaintiff has not established a reasonable likelihood of success on his Lanham Act claim because, as in unfair competition, palming off is an essential ingredient of a Lanham Act claim. On remand in the *Electronics Corp.* case, the district court held that while it had heretofore been an open question in the First Circuit whether palming off is a necessary element of a Lanham Act claim, the district court thought it was not. 358 F.Supp. 1230, 1233 (D.Mass.1973). On appeal, the First Circuit expressly declined to agree with the district court's "conclusion that palming off is not an essential element of a Lanham Act claim," but "only because such a stance is not necessary for the decision of this appeal." 487 F.2d 513, 514 (1st Cir. 1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1491, 39 L.Ed.2d 575 (1974). In *Quabaug Rubber Co. v. Fabiano Shoe Co.,* 567 F.2d 154 (1st Cir. 1977), the First Circuit appears to have resolved this question. There the court of appeals stated that the "basis for an action under [15 U.S.C. § 1125(a)] is use of a mark in interstate commerce which is *likely to cause confusion or to deceive purchasers concerning the source of goods." Id.* at 160 (emphasis added). Although *Quabaug Rubber* was a case involving palming off and not other forms of deception, the court's interpretation of the Lanham Act would seem equally applicable to the instant case. Because defendants' advertisement does not deceive the public as to the source of the goods, I rule that plaintiff has not established a reasonable likelihood of success on the merits of its Lanham Act claim.

■ Plaintiff's final claim is that defendants' advertisement constitutes an "Unfair methods of competition or an unfair or deceptive act or practice" in violation of Mass. Gen.Laws Ch. 93A §§ 2, 11. Defendants counter by arguing that Ch. 93A has no application to this action because of the interstate commerce exemption contained in § 3(1)(b). That section provides that:

"(1) Nothing in this chapter shall apply to

\* \* \* \* \* \*

(b) trade or commerce of any person of whose gross revenue at least twenty per cent is derived from transactions in interstate commerce, excepting however transactions and actions which (i) occur primarily and substantially within the commonwealth, and (ii) as to which the Federal Trade Commission or its designated representative has failed to assert in writing within fourteen days of notice to it and to said person by the attorney general its objection to action proposed by him and set forth in said notice;"

Affidavits submitted by defendants establish that one of the defendants does no business in Massachusetts and that the other two defendants derive over 20% of their gross revenues from out-of-state transactions; plaintiff does not contend to the contrary. Since plaintiff does not allege, nor does it appear, that the transactions at issue here occurred primarily and substantially within the Commonwealth, and since there has been no showing that the Federal Trade Commission has taken any action with respect to the defendants' advertising, I rule that there is a likelihood that defendants will be exempt from liability under Ch. 93A, and therefore that plaintiff has failed to establish a probability of success on the merits sufficient to warrant a temporary restraining order.

■ Even assuming that plaintiff could establish a reasonable probability of success on the merits, several factors convince the Court that the plaintiff does not stand to suffer immediate irreparable harm which outweighs any harm to the defendants. I note first that defendants' advertisements have been circulating for almost two months and yet plaintiff has waited until the very start of the Winter Olympic Games to institute suit. I also note that the plaintiff itself published an advertisement on February 1 of this year announcing in bold type that the plaintiff is "[t]he *unofficial binding* of the winter games at Lake Placid." The clear implication of this advertise-

ment is that there is an "official binding." In view of these factors, and in view of the substantial investment made by defendants to gain sponsorship rights, I rule that plaintiff has failed to establish that it stands to suffer immediate and irreparable harm outweighing any harm to the defendants; any further relief should await a trial on the merits.

Order accordingly.