**COLOMBO, INC., Plaintiff**
vs.
**DART & KRAFT, INC.,
KRAFT, INC. and SEALTEST,
a division of KRAFT, INC., Defendants**

**No. 81-2395-T**

United States District Court
Commonwealth of Massachusetts

**December 15, 1981**

**Bernard J. Bonn, III, esq.** counsel for plaintiff
**Jonathan A. Flint, esq.** counsel for plaintiff**Eric A. Deutsch, esq. counsel for plaintiffPeabody & Arnold, Alexander Pratt**counsel for defendant

## MEMORANDUM

**Tauro, D.J.** Plaintiff, Colombo Incorporated, brought this action on September 21, 1981, seeking, **inter alia,** to enjoin defendant Kraft Incorporated from implementing a promotional program for its large plain yogurt[1] in the New York City metropolitian area. After the Court denied the plaintiff's initial request for a temporary restraining order[2], an evidentiary hearing on plaintiff's motion for a preliminary injunction was commenced. By agreement, the parties have supplemented the testimony offered with documentary evidence. After consideration of the entire record, and for the reasons stated herein, plaintiff's motion for a preliminary injunction is denied.

The heart of Colombo's complaint is its allegation that Kraft's promotional program constitutes unlawful price discrimination in violation of section 2(a) of the Clayton Act, as amended by section 13(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a). The Kraft program is being conducted throughout the Northeastern United States. It consists of a two-for-one offer to retailers in the New York City area during the period September 29, 1981 through December 12, 1981. According to plaintiff, the program will be followed up with further discount offers in the spring of 1982.

The program, as it is now being implemented, permits retailers to choose a thirty-day period between September 21 and December 12 in which to participate by purchasing cases of Kraft's large plain yogurt. Under the terms of the promotion, Kraft will supply participating retailers with one case of large plain yogurt free of charge for every case purchased during the thirty-day period. The effect of the promotion thus is the sale by Kraft of a certain portion of its large plain yogurt at half the normal price[3] during the promotional period. According to Colombo, this effect, when considered along with the financial resources[4] of each of the parties and the unique nature of the product market; requires a finding that Kraft is engaged in predatory pricing that will dampen or eliminate competition.

Kraft argues that its two-for-one offer is being utilized to reintroduce its large plain yogurt in a new case size, and that other yogurt manufacturers, including Colombo, engage in similar promotional activities. Asserting that its promotion enhances rather than destroys competition, Kraft points out that Colombo's share of the relevant New York market is significantly larger than its own. Moreover, Kraft disputes Colombo's contention that its promotion price is below its marginal or average variable costs. Kraft adds the equitable argument that it would be significantly harmed by an order of this Court enjoining a promotional program which is already underway.

In view of the legal remedies available to plaintiff, including treble damages under the antitrust laws of the United States, and the uncertainty as to whether

---

1. The term "large plain yogurt" refers to the sixteen and thirty-two ounce sizes of plain, whole milk yogurt.
2. Plaintiffs have thus far filed three requests for temporary restraining orders, all of which have been denied.
3. In addition, Kraft reduced the normal retail price of its thirty-two ounce and sixteen-ounce plain yogurt by several cents per unit.
4. Plaintiff maintains that Dart & Kraft, Inc. had sales of over nine billion dollars in 1980 with assets in excess of four billion dollars. Colombo, Inc. has annual sales of approximately twenty-two million dollars. Defendant has stated, though, that Dart & Kraft, Inc. is a wholly separate entity from defendant Kraft.

the challenged program lessens or fosters competition, issuance of a preliminary injunction in this case would be inappropriate. As was recently pointed out by the First Circuit, "...before such relief becomes available there must be a showing that there is no adequate remedy at law." The specific criteria to be utilized in antitrust cases are those applied generally where a preliminary injunction is sought:

> "(i)n the First Circuit, a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the Injunction."

**Auburn News Co., Inc. v. Providence Journal Co.,** 659 F.2d 273, 277 (1st Cir. 1981) (quoting **Planned Parenthood League v. Bellotti,** 641 F.2d 1006, 1009 (1st Cir. 1981) (quoting **Women's Community Health Center, Inc. v. Cohen,** 477 F. Supp. 542, 544 (D. Me. 1979) ).

Because the plaintiff has failed to demonstrate that it will suffer irreparable injury if the injunction is not granted and because it appears to this Court that plaintiff will have an adequate remedy at law, the remaining three factors delineated in **Auburn News** need not be addressed here. The remainder of this opinion, therefore, will focus on the question of irreparable harm.

The potential harm asserted by Colombo is damage to its business in the form of potential loss of refrigerated shelf space. According to Colombo, retailers who remove its large plain yogurt from their refrigerated shelf space in favor of Kraft's product during the promotion are unlikely to switch back to Colombo once the program is over. Colombo argues that one-hundred percent of its New York area profit derives from its sales of large plain yogurt. Elimination of this product from retailers' shelves would, therefore, effectively undermine Colombo's presence in the New York City yogurt market and threaten its existence as a business entity. Irreparable and incalculable harm would thus result from this Court's failure to grant the requested injunction.

The First Circuit has provided a clear guideline as to the standard to be applied in determining whether harm is irreparable. "Only a viable threat of serious harm **which cannot be undone** authorizes exercise of a court's equitable power to enjoin before the merits are fully determined.... A preliminary injunction will not be issued simply to prevent a mere possibility of injury." **Massachusetts Coalition of Citizens with Disabilities v. Civil Defense Agency and Office of Emergency Preparedness,** 649 F.2d 71, 74 (1st Cir. 1981) (emphasis added). While an injunction is proper "to prevent the threatened extinction of a business...and to prevent disruption of a company's relationship with its dealers" where a distributorship or franchise is at stake, **Engine Specialties, Inc. Bombardier Ltd.,** 454 F.2d 527, 531 (1st Cir. 1972), the loss of customers, goodwill, or reputation does not generally warrant issuance of a preliminary injunction. **See John B. Hull Inc. v. Waterbury Petroleum,** 588 F.2d 24, 29 (2d Cir. 1978) (distinguishing loss of a franchise or distributorship relationship from other, remedial losses), **cert. denied** 440 U.S. 960 (1979). Thus Colombo must determine that Kraft's promotional program threatens Colombo's very existence as a business, or that Colombo will not "be able to demonstrate actual and measurable injury to (its) business or properties" in later proceedings on the merits. **Auburn News, supra,** at 277. Allegations that plaintiff will suffer or is already suffering from "a substantial loss of sales, profits, and goodwill" will not

suffice. **Salomon/North America, Inc. v. AMF, Inc.,** 484 F. Supp. 846, 848 (D. Mass 1980).

If plaintiff had been able to establish that a serious and permanent diminution in shelf space was likely to result from defendant's program, this Court might be more sympathetic to its claims of irreparable injury. Much of the evidence it has introduced thus far, however, is speculative and inconclusive. The empirical data it has presented shows only a diminution in Colombo's sales of large plain yogurt during the pendency of the promotional program. There has been no persuasive evidence that Colombo will suffer a permanent loss of shelf space, or even that its sales will remain depressed beyond the termination of the program.

In considering plaintiff's claim of irreparable injury the Court must keep in mind plaintiff's assertion that it derives one-hundred percent of its profits in the New York City metropolitian area from the sale of large plain yogurt. However, while Kraft accounts for less than five percent of total sales of large plain yogurt in the New York area, Colombo accounts for approximately fifty percent of those sales. Even if Kraft's promotion has led to a temporary diminution in Colombo's sales, then, the effect would not necessarily be to drive Colombo from the market. In fact, the large number of yogurt brands available in the New York area suggests that any reduction in shelf space which results from the promotion will be absorbed by various competing products, not just Colombo's. Even if a retailer is unlikely to reduce the shelf space of its house brand, plaintiff has failed to demonstrate that Colombo alone will bear the burden of the reduction in shelf space.

Plaintiff's only evidence of the actual impact[5] of Kraft's program, which had been in effect for two months when the parties' last papers were filed on November 20, 1981, is found in the affidavit of Karen L. Lloyd, Colombo's product manager. She based her conclusions on reports of Colombo's internal salesmen and of Stephen J. Epstein of the Norlen Food Marketing Company in New York City. These reports do indicate that decreases of between twenty-one and fifty-six percent have occurred in Colombo's sales of large plain yogurt in some stores during the promotion. The figures also demonstrate an overall fluctuation in Colombo's volume of sales throughout 1981, however. In fact, sales during Colombo's tenth accounting period, when the program was in effect, were **higher** for both the sixteen-ounce and thirty-two ounce sizes than they were in the first accounting period of 1981. (Affidavit of Karen L. Lloyd, par. 8). The drop in sales to the individual customers named by Ms. Lloyd, while dramatic, may not be representative of all of Colombo's customers, nor is it necessarily permanent. While Ms. Lloyd clearly anticipated further reductions in sales as the promotion continued, she did state that "in (her) opinion October was too early to determine the true impact of Breyer's Promotion in Colombo's sales." (Affidavit of Karen L. Lloyd, par. 10.) Finally, while one might infer that the recent decline in Colombo's sales resulted from the promotion, reports of plaintiff's 1980 sales suggest otherwise. (**See** Exhibit F to defendant's Supplemental Memorandum). There was a marked decline in plaintiff's sales of large plain yogurt in the metropolitian New York area between the ninth and tenth accounting periods in 1980. And the difference between the 1980 and 1981 sales figures in the tenth period, for both the sixteen and the thirty-two ounce sizes, is less then ten percent. Given this data, there is no basis for concluding that the drop in plaintiff's sales during the last period of 1981 is due wholly to Kraft's promotion, or that they reflect a permanent change in retailer purchasing in the New York City area.

---

5. Plaintiff's attorneys and its president, Richard W. Egan, have submitted affidavits presaging irreparable injury to Colombo as a result of Kraft's program. Their submissions are not based on specific evidence of the program's effect, however.

This Court remains unpersuaded by the evidence presented thus far, expert and otherwise, that plaintiff will suffer irreparable harm as a result of defendant's promotion, or that any injury it does suffer could not be adequately compensated by a damage award. For this reason, plaintiff's motion for a preliminary injunction must be denied.[6]

J. Tauro
United States District Judge

6. The proposed findings of fact submitted by plaintiff and defendant, while helpful in formulating this opinion, do not alter the Court's conclusion that a preliminary injunction is not warranted. Consequently plaintiff's motion for reconsideration is hereby denied.